**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HEATHER C.,**

                                    **Plaintiff,**

        **v.**                                                    **5:17-cv-0962**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

                                    **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                                    **DECISION & ORDER**

**I.        INTRODUCTION**

        Plaintiff Heather C. ("Plaintiff") brings this action pursuant to the Social Security Act,

42 U.S.C. §  405(g), for review of a final determination by the Commissioner of Social

Security ("Defendant" or "the Commissioner") denying her application for benefits.  Plaintiff

alleges that the Administrative Law Judge's decision denying her application was not

supported by substantial evidence and was contrary to the applicable legal standards.

Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if

both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied,

and Defendant's motion for judgment on the pleadings is granted. The Commissioner's

decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is

dismissed.

## II.    BACKGROUND

### a.  Procedural

Plaintiff filed an application for Disability Insurance Benefits (DIB) and supplemental security income (SSI) payments under Titles II and XVI of the Social Security Act (Act) on December 17, 2013 alleging disability as of June 17, 2013 (Tr. 150-157). The application was initially denied on February 7, 2014.  Tr. 104-109.  Plaintiff submitted a request for hearing on August 19, 2014. Tr. 110-111. The hearing was held in Syracuse, New York via video-teleconference before an Administrative Law Judge ("ALJ"), Michael Carr, appearing from Falls Church, Virginia on December 10, 2015 (Tr. 40-89).  Plaintiff appeared without an attorney or legal representative, and she, her husband, and an impartial Social Security vocational expert testified at the hearing.  By decision dated May 20, 2016, the ALJ found that Plaintiff was not under a disability through the date of his decision. TR. 19-37. Plaintiff requested review by the Appeal Council on June 22, 2016.  Tr. 147-148.  On July 19, 2017, the Appeals Council denied review of the denial of benefits and the decision of the ALJ became the final determination of the Commissioner.  Tr. 1-6.  Plaintiff filed the instant action on August 30, 2017.

### b.  Facts

Defendant does not dispute the underlying facts of this case as set forth by Plaintiff in her brief (Pl. Br.)  at 2-15.   The Court assumes familiarity with these facts, and will set forth only those facts material to the parties' arguments.

### c.  ALJ Decision

At step one of the sequential evaluation, the ALJ found that although Plaintiff had

2

attempted to return to work, she had not engaged in substantial gainful activity since her

June 2013 alleged onset date. Tr. 24-25.  At step two, the ALJ found that Plaintiff had the

following severe impairments: obesity; lumbar spinal stenosis; spondylolisthesis; and

cervical spondylosis. Tr. 25.   He found that the Plaintiff's asthma and anxiety were not

severe impairments.  Tr. 25.  At the third step, the ALJ found that Plaintiff's impairments

did not meet or medically equal a listed impairment found at Appendix 1 to 20 C.F.R. Part

404, Subpart P (the Listings). Tr. 26.

Prior to step four, the ALJ found that Plaintiff retained the residual functional

capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and

416.967(a).[1] The ALJ further reduced Plaintiff's RFC as follows:

> The claimant needs to alternate to sitting for two to three minutes after every
> one hour of standing, needs to alternate to sitting for two to three minutes
> after every one hour of walking, and needs to alternate to standing for two to
> three minutes after every one hour of sitting. The claimant can occasionally
> balance, stoop, kneel, crouch, and crawl. She can occasionally climb ramps
> and stairs, but never climb ladders, ropes, or scaffolds.

Tr. 18.

The ALJ indicated that he carefully considered the Plaintiff's subjective allegations

and testimony regarding the alleged impact of the impairments upon her inability to

function, in accordance with all applicable Social Security laws and regulations, however,

found that the totality of the objective evidentiary record failed to establish that her medical

---

[1]Under the Commissioner's regulations, sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying objects like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Ruling (SSR) 96-9p. Although a sedentary job is defined as one which involves sitting – approximately a total of six hours during an eight-hour work day – a certain amount of walking and standing is often necessary in carrying out job duties. *Id.* Jobs are sedentary if walking and standing are required occasionally – a total of approximately two hours - and other sedentary criteria are met. *Id.* By its nature, work performed primarily in a seated position entails no significant stooping. SSR 83-10.

conditions render her disabled. Tr. 27. The ALJ afforded the opinion of the Plaintiff's treating neurosurgeon specialist, Dr. Bianco, "limited" weight. Tr. 29. The ALJ also afforded the opinion of an Independent Medical Examiner, Dr. Hausmann, "some weight," Tr. 29, afforded "some weight" to the opinion of consultative examiner, Elke Lorensen, MD, Tr. 30, and afforded "great weight" to the consultative medical opinion of Jeanne Shapiro, Ph.D., Tr. 25. The ALJ noted that Nicole Pitzer, PA-C, was not an acceptable medical source but examined the consistency of her medical opinions with her treatment notes. Tr. 25.

At step four, the ALJ determined that Plaintiff could perform her past relevant work as a "triage nurse" during which she "took escalated calls or emergency calls," was sitting down most of the day, and had no lifting requirements. Tr. 30-31, 51. The ALJ alternatively proceeded to step five, and relying on vocational expert testimony, determined that there were other jobs existing in the national economy that Plaintiff could perform, such as cashier II, D.O.T. 211.462-010, svp 2, light exertional level, customer order clerk, D.O.T. 249.362-026, svp 4, sedentary exertional level, and receptionist, D.O.T. 237-367-038, svp 4, sedentary exertional level. Tr. 30-32. Accordingly, the ALJ held that Plaintiff was not disabled under the Act. Tr. 32-33.

## III.    STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. *See* 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d

4

Cir. 1990); *Shane v. Chater*, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. *See Tejada*, 167 F.3d at 773; *Balsamo*, 142 F.3d at 79; *Cruz*, 912 F.2d at 11; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Perez*, 77 F.3d at 46; *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990)(quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

## IV.    DISCUSSION

### a.  Issue on Appeal

Plaintiff argues that the ALJ erred by not considering all of her impairments,

developing the record, or properly evaluating the medical opinion evidence.  She asserts

that the issue on this appeal "is whether or not substantial evidence exists which supports

the Commissioner's denial of Plaintiff's disability benefits and the determination that the

Plaintiff has the residual functional capacity to perform a limited range of sedentary work

as outlined by the ALJ (Tr. 26) and that within this residual functional capacity there are

jobs that exist in significant numbers in the national economy that the Plaintiff can perform

since the alleged onset date of disability, June 17, 2013 through May 20, 2016, the date of

the Administrative Law Judge's decision." Pl. Brief, at 2.  Defendant argues that the record

is fully developed, the ALJ considered all of Plaintiff's impairments, and the ALJ properly

evaluated the medical opinion evidence. Def. Brief, at 3.  Defendant further contends that

the ALJ's finding that Plaintiff could perform a limited range of sedentary work and was not

precluded from performing jobs existing in the national economy is supported by

substantial evidence in the record. *Id.*  Finally, Defendant argues that because substantial

evidence supports the Commissioner's decision, and the Commissioner applied the

correct legal standards, the Commissioner's decision should be affirmed.   The Court will

address Plaintiff's arguments below.

### 1.  Failure to Properly Develop the Record

Plaintiff argues that the ALJ did not properly develop the record because he failed

to obtain treatment notes from Dr. Bianco from October 2013 to August 2014. Pl. Br.

19-20. In this regard, Plaintiff contends that because Dr. Bianco indicated in his medical source statement that he treated the plaintiff every 6-8 weeks (TR. 546), "it is a reasonable conclusion that there had to be both pre-operative and post-operative visits conducted before and after the plaintiff's cervical spine surgery." Pl. Br. 19 . However, the record contains a letter dated December 11, 2015 that the Commissioner sent to Dr. Bianco requesting, relative to Plaintiff, "any and all treatment/progress/clinic notes, evaluations, laboratory results etc. [from] June 18, 2013 to the present." Tr. 551-52. Moreover, the record reflects that the Commissioner received numerous medical records and treatment notes from Dr. Bianco and Syracuse Orthopedic Specialists (SOS) (where Plaintiff saw Dr. Bianco), *see* Tr. 553-669, including: an MRI imagining report from July 12, 2013, Tr. 669; Plaintiff's treatment notes from August 9, 2013 through January 1, 2016, indicating that Dr. Bianco or a medical professional at SOS as the "provider," Tr. 553-669; a note of a March 17, 2014 pre-operative visit with Dr. Bianco, Tr. 620-23; an April 1, 2014 operative report listing Dr. Bianco as the surgeon, Tr. 658-60; and notes from Plaintiff's first, second, and third post-operative visits with Dr. Bianco or a physician's assistant at SOS in April, May, and August 2014, Tr. 609-18. There is no indication that records are missing, and contrary to Plaintiff's assertion of the absence of Dr. Bianco's treatment notes from October 2013 to August 2014, the record contains treatment notes from Dr. Bianco on August 9, 2013, Tr. 664-666, October 4, 2013, Tr. 661-663, August 18, 2014, Tr. 609-611, January 31, 2014, Tr. 624-627, March 17, 2014, Tr. 619-623, and May 23, 2014, Tr. 612-614. Plaintiff has not specifically identified any missing records from Dr. Bianco or a medical professional working under his direction, much less explained how the unidentified missing records would have altered the outcome of her proceeding.

7

Accordingly, Plaintiff's appeal on this ground is denied. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013)("Reices–Colon's record supplementation argument is . . . baseless. She identifies no specific record that was missing, much less explains how it would have affected her case. We therefore find no error in the ALJ's development of the record.").

Plaintiff also argues that the ALJ "misled [her] with respect to what evidence he would consider with respect to her claim of disability." Pl. Br. at 19. In this regard, Plaintiff cites to the hearing transcript where she told the ALJ that she had two psychological evaluations performed in 2007. Tr. 45. The ALJ told Plaintiff that she was "certainly welcome to ... submit those," but indicated that because the evaluations occurred prior to the alleged onset date, he did not deem the psychological evaluations "material to . . . my determination here today." Tr. 46. Even assuming that the ALJ violated his obligation to fully develop the record by failing to request the 2007 psychological evaluations, Plaintiff fails to indicate how the receipt of this material would have altered the ALJ's determination. Thus, the appeal on this ground is denied. *Reices-Colon*, 523 F. App'x 7 at 799

### 2. Step Two Findings

Plaintiff next argues that the ALJ erred by not properly considering her headaches, myofascial pain, and Post-Concussive Syndrome as severe impairments. Pl. Br. 20-21. In support of her argument, Plaintiff cites to, *inter alia*, treatment notes from SOS and New York Spine and Wellness Center (NYSWC), which listed headaches, myofascial pain, and Post-Concussive Syndrome as diagnoses. Pl. Br. 21 (citing Tr. 430-432 and 441-442).

"At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities." *Hamilton v. Colvin*, 8 F. Supp. 3d 232, 239 (N.D.N.Y. 2013)(citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). "The following are examples of 'basic work activities': 'walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations.'" *Id.* (quoting *Gibbs v. Astrue*, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008) and citing 20 C.F.R. § 404.1521(b)(1)-(5)). It is the claimant's burden to show at step two that she has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).[2]

> "Impairments" are "anatomical, physiological, or psychological abnormalities... demonstrable by medically acceptable clinical and laboratory techniques." 20 C.F.R. §§ 404.1508, 416.908. "Severe" impairments are those that "significantly limit" physical or mental abilities to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *see also* Social Security Ruling ("SSR") 85–28, Titles II and XVI: Medical Impairments That Are Not Severe, 1985 WL 56856, at *3–4 (S.S.A. 1985). "The phrase 'significantly limits' is not synonymous with 'disability.' Rather, it serves to 'screen out *de minimis* claims.'" *Showers v. Colvin*, No. 3:13-CV-1147(GLS), 2015 WL 1383819, at *4 (N.D.N.Y. Mar. 25, 2015) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality'...[with]...'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

---

[2]("If the process ends at step two, the burden of proof never shifts to the [Commissioner]. ... It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.")

*Cordero v. Colvin*, 2016 WL 6829646, at *2 (W.D.N.Y. Nov. 21, 2016).

"[T]he omission of an impairment [by the ALJ] at step two does not in and of itself require remand and may be deemed harmless error." *Rye v. Colvin*, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016)(citing *Pompa v. Comm'r of Soc. Sec.*, 73 Fed. Appx. 801, 803 (6th Cir. 2003)[3] and *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)[4]). "This is particularly true where the disability analysis continued and the ALJ considered all of the claimant's impairments in combination in his RFC determination." *Id.* (citing *Reices-Colon*, 523 Fed. Appx. at 798[5]). "However, where [an] omitted impairment was not accounted for in the ALJ's RFC determination, or in other words, where the ALJ's step-two error prejudiced the claimant at later steps in the sequential evaluation process, remand is required." *Southgate v. Colvin*, 2015 WL 6510412, at *6 (D. Vt. Oct. 28, 2015)(citing, *inter alia*, *Hamilton*, 8 F. Supp.3d at 242[6]).

On her application for disability, the Plaintiff alleged disability as a result of a combination of impairments including compression of discs in her neck, neck injury, lower back injury, daily headaches, reading disability, anxiety, arm weakness, numbness in hands and feet as well as problems with confusion and memory. Tr. 183 & 203. On the

---

[3]("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.")

[4](applying harmless error standard in social security context, and holding that, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration")

[5](finding alleged step-two error harmless because ALJ considered impairments during subsequent steps)

[6](ALJ's step-two error not harmless where there was "no indication in the decision that the ALJ considered the impact of Plaintiff's carpal tunnel syndrome on his ability to perform work-related functions.")

Function Report SSA, Plaintiff indicated, *inter alia*, that her driving was limited because of limited range of motion in her neck, headaches, and neck pain, and that her ability to read was limited by bad headaches. Tr. 195.  Plaintiff completed a disability SSA-3441 and indicated that she had a lot of trouble walking or sitting for long periods, that she had problems with her memory and concentration, that she was not able to lift more than 10 pounds, and had headaches. She indicated that she was unable to go shopping alone and that she was unable to do household chores. Tr. 203.

　　Relative to Plaintiff's complaints of headaches, myofascial pain, and diagnosis for Post-Concussive Syndrome, the record reflects as follows.  On September 12, 2013, Plaintiff presented to NYSWC with complaints of neck pain radiating to her hands bilaterally. On examination, she had limited range of motion of the cervical spine and was assessed with cervical disc degeneration, cervical radiculopathy, cervical spondylosis, and cervicalgia and was administered left cervical transforaminal nerve block with right cervical transforaminal nerve block. Tr. 265-268.  On October 4, 2013, Dr. Bianco reported that the Plaintiff underwent a combination of foraminal and/or trigger point injections but that she continued with right side pain and headaches. There was no change to her examination findings and he recommended additional physical therapy. Tr. 241-244.  The Plaintiff returned to NYSWC on October 24, 2013 and reported some relief following the cervical transforaminal nerve block injections. Tr. 260-264.  On November 7, 2013, NYSWC reported that the Plaintiff indicated 60% pain relief that lasted three days. Plaintiff reported difficultly sleeping and headaches. Myofascial Pain Syndrome was added as a diagnosis. Tr. 256-259.  On January 3, 2014, NYSWC found on examination 4/5 bilateral grip with numbness and tingling over both arms into hands bilaterally. They recommended an

epidural steroid injection to address recurring headaches, and neck pain. Tr. 251-255. On January 9, 2014, the Plaintiff also was seen by Nicole Pitzer, PA at Familycare Medical Group PC to discuss treatment options, and reported that her pain symptoms were worsening with pain in her upper arms, inability to open jars, difficulty with driving, and she was still having a lot of headaches. Tr. 358-360.

At the request of the Commissioner, the Plaintiff was examined by Jeanne A. Shapiro, Ph.D on January 27, 2014. Dr. Shapiro reported that the Plaintiff complained of difficulty sleeping, anxiety related to her cervical spine condition, and difficulty thinking clearly. Dr. Shapiro concluded, inter alia, that Plaintiff "appears to have mild limitations regarding her ability to attend to a routine and maintain a schedule." Tr. 365-369.

Plaintiff was also seen for an independent medical examination on January 30, 2014 by Steven Hausmann, MD. Dr. Hausmann reported that Plaintiff continued with a number of subjective complaints with pain which radiates below the shoulder level and both arms with Spurling testing, suggestive of a compressive lesion in the cervical spine. He recommended returning to the surgeon for consideration of surgery as conservative measures failed to help her in any meaningful way. Tr. 375-377.

On April 1, 2014 the Plaintiff underwent anterior cervical discectomy with complete decompression of the spinal cord and bilateral foramen C5-6 and C6-7, anterior cervical arthrodesis C5 to C7, anterior cervical instrumentation C5 to 7 with Stryker Aviator plate and screw construct, and insertion of biomechanical device in the intervertebral disc space C5-6 and C6-7 Peek cages by Dr. Bianco. Tr. 416.

Plaintiff was again examined by Dr. Hausmann on June 20, 2014. Dr. Hausman reported that the surgery resulted in decreasing her headaches and her pain. On

12

examination he found limited range of motion of the cervical spine and lumbar spine. Tr. 117. He indicated that he reviewed all of her surgeon's reports and provided diagnoses of cervical strain, cervical disc herniation, status post multilevel cervical discectomy and fusion, cervical degenerative disc disease, and lumbar strain and he indicated that she remained disabled. Tr. 118.

On September 5, 2014, the Plaintiff was examined and evaluated at the Upstate Concussion Center by Deborah E. Spinks, Ph.D. Since her injury, Plaintiff reported constant headaches, neck pain and back pain, sensitivity to light and noise, light-headedness and dizziness with positional changes, mild balance issues, eyes easily fatigue, change in sleep and increased fatigue. In addition, Plaintiff reported difficulty with attention, concentration, memory, processing speed, reading comprehension, and word finding as well as emotional symptoms of irritability and anxiety and depression. On exam, Dr. Spinks found that attention to conversation was impaired as she could be tangential and verbally impulsive. She indicated she reviewed Plaintiff's medical records and found that the Plaintiff suffered a concussion which is supported by her subsequent physical, cognitive, and emotional symptoms which are consistent with post-concussion sequalae and referred her to occupational therapy for cognitive and visual symptoms. Tr. 430-432. On October 18, 2014, Dr. Spinks reported that the Plaintiff suffers with continued anxiety at times but reported that occupational therapy was helping. Tr. 436. On October 23, 2014, the Plaintiff underwent visual retraining. On examination, the Plaintiff continued to have deficits in convergence at 16 inches and with reading tolerances and headaches. The report indicates that Plaintiff's eyes fatigue quickly and take increased time to recover. Tr. 441-442.

In September 2015, PA Pitzer completed a questionnaire and stated that Plaintiff's diagnoses were anxiety, attention deficit disorder (ADD), and processing disorder. Tr. 530. Plaintiff's symptoms were anxiety and decreased ability to concentrate with stress. Tr. 530. PA Pitzer opined that Plaintiff was capable of a low stress job, but would be off-task more than 25 percent of the workday, and be absent more than four days a month. Tr. 532. The remainder of the questionnaire pertains to physical abilities, and PA Pitzer indicated that they were not applicable (NA). Tr. 531-32.

Regarding headaches, Plaintiff testified that the daily headaches she was experiencing before her neck surgery resolved after the surgery to the point that she was experiencing them only "every once in a while," but she did not reference the headaches as impairing her ability to work. Tr. 43. While Plaintiff contends that evidence exists that her headaches continued after her neck surgery, even she did not appear to equate the intermittent headaches with a significant limitation on her physical or mental ability to do basic work activities. Thus, she fails to satisfy her burden at step two to show that she has a "severe impairment" from her headaches. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c) *Bowen*, 482 U.S. at 146 n. 5.

Moreover, the ALJ correctly proceeded beyond step two and considered Plaintiff's subjective allegations as well as the objective evidence, and reasonably found that she retained the RFC to perform a limited range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). Tr. 26-30. In so doing, the ALJ considered Plaintiff's medical records as well as Plaintiff's allegations of pain and headaches. Tr. 26-30. In his analysis, the ALJ indicated that "[i]nitially after the accident, [Plaintiff] had headaches every day and numbness in her fingers and hands, and dropped things. However, after cervical spine

surgery, she only has these symptoms intermittently." Tr. 26-27. Substantial evidence supports this conclusion.

The lion's share of the testimony by Plaintiff and her husband concerned the limitations Plaintiff experienced from her neck, back, and leg pain. Tr. 48-68. Plaintiff does not point to evidence indicating that her myofascial pain caused a significant limitation on her physical or mental ability to do basic work activities. Furthermore, the ALJ proceeded beyond step two and considered Plaintiff's subjective allegations and the objective evidence on pain and related symptom. The ALJ concluded:

> Over time, it appears that after surgery, her symptoms began improving. She stated that when she performed home exercise routines, her symptoms improved. Her gait was normal. There was hardly any indication of her dropping items due to the alleged issues with the hands. She admitted that she no longer has numbness and tingling in the hands, she only has to change positions occasionally, and she only has headaches occasionally. While it appears that the claimant was advised to refrain from work at times, no treating physician provided her with functional limitations during the course of treatment. Dr. Bianco later provided the claimant with functional limitations, but his objective findings failed to support such severe limitations. Thus, it appears that the alleged location, duration, frequency, and intensity of the claimant's pain and other symptoms are unsupported by the objective medical evidence of record.

Tr. 30.

Although the ALJ did not mention myofascial pain, his analysis addressed the pain and related symptoms that Plaintiff contended impaired her ability to perform work. Thus , the ALJ correctly proceeded beyond step two and considered Plaintiff's subjective allegations of pain and reasonably found that she retained the RFC to perform a limited range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). Tr. 26-30. Substantial evidence supports this conclusion.

Plaintiff also testified to being unable to control her emotions at work and to

experiencing anxiety.  Tr. 64-64.  Assuming that these emotional issues are symptoms of Post-Concussive Syndrome, the ALJ properly proceeded beyond step two and considered Plaintiff's subjective allegations and reasonably concluded:

> In September 2015, Nicole Pitzer, PA-C, assessed the claimant's condition due to alleged anxiety, noting that she would be off task twenty-five percent or more during an eight-hour workday and would miss more than four days per month.  However, Ms. Pitzer is not an acceptable medical source and her opinion is inconsistent with her own treatment notes. Specifically, the claimant's mental status exams were all virtually normal and it does not appear that the condition was diagnosed by an acceptable medical source. The undersigned also affords great weight to the consultative medical opinion of Jeanne Shapiro, Ph.D. in that it is consistent with the virtually unremarkable examination findings and the longitudinal record is normal mental status exams. Specifically, she noted that the claimant would have mild limitations in attending to a routine and maintaining a schedule, but otherwise has no limitations and ultimately no psychiatric diagnosis. Consistent with this, her objective mental status exam was virtually normal. Consistent with this, the Disability Determination Services medical examiner that noted that the claimant did not present with any emotional or behavioral symptoms that would be considered out of proportion to the severity of her stressors. Accordingly, the undersigned finds the alleged anxiety to be a non-medically determined impairment.

Tr. 25 (record citations omitted).  Substantial evidence supports this conclusion.  Although the ALJ did not reference Plaintiff's Post-Concussive Syndrome diagnosis or that Plaintiff had complained to Dr. Spinks of continued anxiety (reportedly being help by occupational therapy), the ALJ's reliance on Dr. Shapiro's assessment of Plaintiff's mental and emotional state provides substantial evidence to reach the conclusion that Plaintiff's anxiety was not a non-medically determined impairment.

Here, any error at step two was harmless as the ALJ properly proceeded to consider all of Plaintiff's impairments and the entire record to reach his final determination. *See* Tr. 26-33; *O'Connell v. Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014); *Reices-Colon*, 523 F. App'x at 798; *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (errors at step

two are harmless as long as the ALJ continues the sequential analysis).  Plaintiff's appeal on this ground is denied.

### 3.  Opinions of Plaintiff's Treating Sources

Lastly, Plaintiff argues that the ALJ did not properly evaluate the medical opinion evidence from her treating sources. Pl. Br. 21-25. Specifically, Plaintiff contends that the ALJ should have granted greater weight to Dr. Bianco's January 2016 assessment and PA Pitzer's September 2015 assessment. Pl. Br. 22-25. Plaintiff also maintains that the ALJ should have given lesser weight to the opinion of independent medical examiner Dr. Steven Hausmann. Pl. Br. 23.

### A.  Dr. Bianco's January 2016 Medical Opinion

Dr. Bianco completed a medical questionnaire in January 2016, stating that Plaintiff's diagnoses were cervical spine fusion, lumbar fusion, pain, weakness, and numbness. Tr. 546-49. The doctor opined that Plaintiff: could walk one city block without pain or needing to rest, sit for zero minutes at a time, and stand for 15 minutes at a time. Tr. 547; could sit or stand/walk for less than two hours total. Tr. 547; needed to shift positions at will and unscheduled breaks every 10 minutes due to symptoms of muscle weakness, pain, fatigue, medication side-effects, and anxiety. Tr. 547; her legs needed to be elevated when sitting due to pain and numbness. Tr. 548; did not need a cane. Tr. 548; could rarely lift and carry less than 10 pounds and rarely climb stairs, but never twist, stoop, crouch, or climb ladders. Tr. 548; had limitations with reaching, handling, and fingering, and would be off-task more than 25 percent of a workday. Tr. 548-49; and could not perform a low stress job and would be absent more than four days a month. Tr. 549.

Normally, an ALJ is required to find a treating physician's opinion to be controlling when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(c)(2). "On the other hand, in situations where 'the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinion of other medical experts,' the treating physician's opinion 'is not afforded controlling weight." *Pena ex rel. E.R. v. Astrue*, 2013 WL 1210932, at *15 (E.D.N.Y. March 25, 2013) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). "'[T]o override the opinion of the treating physician, we have held that the ALJ must consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). An ALJ must "set forth [his] reasons for the weight [he] assigns to the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133.

Here, the ALJ stated that he "affords Dr. Bianco's medical opinion limited weight in that he gave extreme limitations that are unsupported by the objective medical evidence of

record. Specifically, he claimed the claimant can sit for only ten minutes at one time and would need to take breaks every ten minutes (for every ten to twenty minutes), but this is not well-supported or explained. In addition, his treatment notes fail to support this degree of limitation." Tr. 29. Although the ALJ did not specifically reference at Transcript page 29 the objective medical evidence of record or Dr. Bianco's treatment notes that contradicted Dr. Bianco's medical opinion, he does reference contradictory objective medical evidence of record (including objective medical evidence from Dr. Hausmann, Dr. Bianco, and a nurse practitioner under Dr. Bianco's supervision) and treatment notes from Dr. Bianco (and a nurse practitioner under his supervision) in the opinion immediately before the conclusion to afford limited weight to Dr. Bianco's January 2016 medical opinion. *See* Tr. 27-29. It is clear that this was the evidence the ALJ was referring when he determined to give Dr. Bianco's opinion limited weight. Further, the ALJ references the frequency, length, nature, and extent of treatment Plaintiff received from Dr. Bianco, Tr. at 27-29, and that Dr. Bianco is an orthopedic surgeon. Tr. 27. This supports the ALJ's decision to give Dr. Bianco's opinion less than controlling weight. Accordingly, Plaintiff's appeal on this ground is denied.

### B. Dr. Hausmann's June 2014 Medical Opinion

Regarding Dr. Hausmann's opinions, the ALJ wrote:

[I]n January 2014, the claimant saw orthopedic surgeon, Steven Hausmann, M.D., for independent medical exam regarding her motor vehicle accident. He opined that he felt she could return to work as a nurse with accommodations, if necessary. Further, he noted he did not find any formal limitations for the claimant, but she might need to limit herself for subjective complaints. Consistent with what appears to be only subjective complaints Dr. Hausmann indicated that the claimant had "nothing objective on her examination." It is again notable that a finding of disability is reserved for the

Commissioner of Social Security Administration.

> In June 2014, the claimant returned to see Dr. Hausmann for an evaluation. He opined that because the claimant underwent surgery, "she should be able to return to most activities." "She should not do any strenuous heavy restrictions ... Therefore, I do not anticipate the need for any specific treatment to the lumbar spine other than perhaps a home exercise program." Consistent with these minimal limitations, the claimant exhibited "excellent mobility." She had no objective neurologic deficits. Although she had some leg pain complaints with straight leg raise testing, she had no other abnormal objective findings with normal muscle strength, normal sensory findings, and a normal gait pattern. As a result, the undersigned affords Dr. Hausmann's medical opinion some weight in that it is consistent with the objective findings during that time that revealed improvement. Moreover, the claimant admitted she still had somewhat normal activities of daily living. She stated she drives, does some housework, does light lifting, does some walking for exercise, and goes grocery shopping with her husband.

Tr. 28-29.

Plaintiff argues that Dr. Hausmann's opinion did not have the benefit of subsequent records and should be read in that context. Pl. Br. 23. The Commissioner contends that by giving Dr. Hausmann's opinion only some weight, this "is exactly what the ALJ did in reaching his RFC finding." Def. Br. 9-10. As the Commissioner asserts, although Dr. Hausmann opined Plaintiff could return to work, the ALJ also considered all of the subsequent treatment records as well as Dr. Bianco's assessment, and limited Plaintiff to less than sedentary work, which is the lowest exertional level under the Commissioner's regulations. Tr. 26-30; *see* 20 C.F.R. §§ 404.1567, 416.967. Thus, whether Dr. Hausmann had access to subsequent treatment notes is not relevant because it is the ALJ's duty, not Dr. Hausmann's, to review the entire record and determine Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). The ALJ

20

properly considered Dr. Hausmann's June 2014 opinion and reasonably accorded it some weight in light of the evidence in this case. Tr. 28-29. Plaintiff's appeal on this ground is denied.

### C. PA Pitzer's September 2015 Medical Opinion

Plaintiff also maintains that the ALJ erred by giving no weight to PA Pitzer's September 2015 medical opinion. Pl. Br. 23-25. In September 2015, PA Pitzer completed a questionnaire and stated that Plaintiff's diagnoses were anxiety, attention deficit disorder (ADD), and processing disorder. Tr. 530. Plaintiff's symptoms were anxiety and decreased ability to concentrate with stress. Tr. 530. PA Pitzer opined that Plaintiff was capable of a low stress job, but would be off-task more than 25 percent of the workday, and be absent more than four days a month. Tr. 532. The remainder of the questionnaire pertains to physical abilities, and PA Pitzer indicated that they were not applicable (NA). Tr. 531-32.

At the time of the ALJ's decision, physicians' assistants were not considered "acceptable medical sources." *See Evans v. Colvin*, 649 F. App'x 35, 38 (2d Cir. 2016)("While an ALJ may consider evidence from a PA, such a source is not an 'acceptable medical source' and therefore cannot constitute a 'treating source.'" )(citing 20 C.F.R. §§ 404.1502, 404.1513(d)(1)). Although § 404.1502 has been revised effective March 27, 2017 to include physicians' assistants as acceptable medical sources, the Court cites and applies the regulations that were in effect at the time of the ALJ's decision on May 20, 2016. *See Jessica R. v. Berryhill*, No. 5:17-CV-236, 2019 WL 1379875, at *10, n. 9. (D. Vt. Mar. 27, 2019). "Only 'acceptable medical sources' can give us medical

opinions. *See* 20 CFR.404.1527(a)(2) and 416.927(a)(2). [And] only 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006)(citing 20 CFR 404.1527(d) and 416.927(d)). Although evidence from "other" sources, such as PA Pitzer, "cannot establish the existence of a medically determinable impairment," SSR 06–03p, 2006 WL 2329939, at *2, "[t]he Commissioner will consider evidence from other sources to show 'severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Orts v. Astrue*, No. 5:11-512, 2012 WL 6803588, at *5 (N.D.N.Y. Nov. 14, 2012), *report and recommendation adopted*, No. 5:11-CV-0512 LEK/ESH, 2013 WL 85071 (N.D.N.Y. Jan. 7, 2013)(interior quotation marks omitted, citing 20 C.F.R. §§ 404.1513(e), 416.913(e)).

Here, the ALJ found that Plaintiff did not establish anxiety or other mental impairments as a medically determinable impairment because "Ms. Pitzer is not an acceptable medical source." Tr. 25. Further, contrary to Plaintiff's assertions, the ALJ did not simply reject PA Pitzer's opinion because she was not an acceptable medical source, but rather found that PA Pitzer's opinion "is inconsistent with her own treatment notes. Specifically, the claimant's mental status exams were all virtually normal and it does not appear that the condition was diagnosed by an acceptable medical source." Tr. 25. For example, Plaintiff was routinely found cooperative, with normal mood, appropriate speech and affect, clear and coherent speech, and good eye contact. Tr. 301, 306, 316, 338, 359, 425, 444, 474, 479, 505, 510, 515. In June 2015, Plaintiff showed "[n]o apparent anxiety, depression, or agitation." Tr. 501.

22

Moreover, the ALJ found that PA Pitzer's opinion is inconsistent with other evidence in the record, including the opinion and findings of consultative psychologist Dr. Shapiro. Tr. 25; *see* Tr. 365-69. Dr. Shapiro examined Plaintiff in January 2014 and found that she had "[n]o psychiatric diagnosis." Tr. 368. She opined that Plaintiff had no limitations in understanding and following simple directions and instructions, performing simple and complex tasks, maintaining attention and concentration, learning new tasks, making appropriate decisions, or dealing with stress. Tr. 368. For example, Dr. Shapiro found that Plaintiff was cooperative, had adequate manner of relating and social skills, fluent and clear speech, coherent and goal directed thought processes, calm mood, intact attention and concentration, intact recent and remote memory skills, and average range intellectual functioning. Tr. 367-68. The ALJ found that Dr. Shapiro's opinion is consistent with Plaintiff's normal mental status examination findings by Dr. Shapiro as well as other normal findings in the record. Tr. 25. The ALJ reasonably gave Dr. Shapiro's opinion great weight, Tr. 25, and thus reasonably gave PA Pitzer's opinion no weight. Plaintiff's appeal on this ground is denied.

## V.     CONCLUSION

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is **DENIED**, and Defendant's motion for judgment on the pleadings is **GRANTED**. The Commissioner's decision denying Plaintiff's disability benefits is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: March 29, 2019

Thomas J. McAvoy
Senior, U.S. District Judge